**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **HOOF HEARTED BREWING LLC,**<br>300 County Road 26<br>Marengo, Ohio 43334 | **Case No.** |
| **and** | **Judge** |
| **HOOF HEARTED BREWING II, LLC**<br>26 E. 5th Avenue<br>Columbus, Ohio 43201 | |
| **Plaintiffs,** | |
| **v.** | |
| **HOOF HEARTED BREWPUB LLC,**<br>c/o 1600 CNB Corp. (Statutory Agent)<br>1375 E. 9th St., Fl. 29<br>Cleveland, Ohio 44114 | |
| **Defendant.** | |

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs Hoof Hearted Brewing LLC ("HHB") and Hoof Hearted Brewing II, LLC ("HHB II") (collectively, "Hoof Hearted"), by and through its undersigned counsel, hereby bring this verified Complaint against Defendant Hoof Hearted Brewpub LLC ("Defendant"). In support thereof, Hoof Hearted alleges as follows:

## <u>INTRODUCTION</u>

1. This action seeking declaratory and injunctive relief arises from Defendant's unauthorized use of HHB's HOOF HEARTED trademark after HHB terminated Defendant's trademark license. Despite receiving notice of termination on April 30, 2024, Defendant continues to use HHB's HOOF HEARTED trademark in connection with the consumer-facing and source-

identifying name of the establishment located at 850 North 4th St, Columbus, OH 43215, known as "Hoof Hearted Brewery and Kitchen."

## THE PARTIES

2.      HHB is an Ohio limited liability company with a principal place of business located at 300 County Road 26, Marengo, Ohio 43334.

3.      HHB II is an Ohio limited liability company with a principal place of business located at 26 E. 5th Avenue, Columbus, Ohio 43201.

4.      Defendant is an Ohio limited liability company with a principal place of business located at 850 North 4th St, Columbus, Ohio 43215.

5.      HHB own a fifty-percent (50%) membership interest in Defendant.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) and under principles of supplemental jurisdiction outlined in 28 U.S.C. §§ 1338(b) and 1367.

7.      This Court has personal jurisdiction over Defendant because Defendant is organized in Ohio, primarily operates, and maintains its principal place of business in Ohio. Defendant also committed tortious acts in Ohio out of which Hoof Hearted's claims arise.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## THE FACTS

### HHB and the HOOF HEARTED Brand

9.      In 2009, best friends Trevor Williams, a former sommelier, and Jarrod Bichon, a former engineer, first discussed the idea of starting a beer company. They decided to call their beer and company "Hoof Hearted."

10.     As a matter of trademark law, "Hoof Hearted" is an "arbitrary" mark when used in connection with beer products and restaurant and bar services. As an arbitrary mark, "Hoof Hearted" is inherently distinctive for such goods and services and is entitled to the highest legal protection as an indicator of source.

11.     From 2009 to 2010, Trevor Williams and Jarrod Bichon, along with Jarrod's brother, Ryan Bichon, brewed beer out of Jarrod's garage in Westerville, Ohio, making homemade kegs to share with friends and family.

12.     After months of trial and error, the pair figured out how to make beer that they found to be exceptionally pleasing and palatable. With others enjoying the beer as well, the group decided that they needed more space, and so the two started to brew beer out of a pole barn in Marengo, Ohio, distributing the beer under the "Hoof Hearted" name. And the brand continued to grow.

13.     In 2011, Trevor, Jarrod, and Ryan Bichon formed "Hoof Hearted Brewing LLC." Around that same time, Plaintiff moved from the pole barn into a building next door to open a taproom in Marengo. *See Hoof Hearted Brewing Launching Soon in Columbus*, COLUMBUS UNDERGROUND, https://columbusunderground.com/hoof-hearted-brewing-launching-soon-in-columbus/, Nov. 8, 2011 (last accessed May 7, 2024).

14.     The HOOF HEARTED name and brand was used for its tongue-and-cheek phrase that pokes fun at the seriousness that is pervasive in the brewery industry, particularly among craft brewers:

3

 

15.     HHB's HOOF HEARTED products gained popularity with consumers, and its sales grew considerably over the next several years, leading to lines out the door at the height of the craft beer craze.

16.     HHB's HOOF HEARTED products received critical acclaim as well.

17.     For example, BeerAdvocate ranked HHB's HOOF HEARTED South of Eleven among Ohio's Top 50 Rated Beers in October 2014. *See Top Rated Beers: Ohio (US)*, BEERADVOCATE, https://web.archive.org/web/20141026150927/http://www.beeradvocate.com/lists/state/oh/ (last accessed May 7, 2024).

18.     By November 2014, HHB's HOOF HEARTED "Musk of the Minotaur IPA" was named "King of Ohio IPA." *See The King of Ohio IPA crown goes to . . .*, PAT'S PINTS, https://patspints.com/2014/11/03/the-king-of-ohio-ipa-crown-goes-to/ (last accessed May 7, 2014).

19.     The popularity of HHB's HOOF HEARTED taproom continued to grow as well. Pat's Pints described "hundreds of Central Ohio beer lovers" travelling to Marengo to get the latest HOOF HEARTED products:



*See Hoof Mania Grips Central Ohio*, PAT'S PINTS, https://patspints.com/2015/11/19/hoof-mania-grips-central-ohio/, Nov. 19, 2015 (last accessed May 7, 2024).

20.     From its inception through 2015, HHB further grew the HOOF HEARTED brand, among other things, by aggressively promoting the HOOF HEARTED brand and products at the following festivals located in Columbus, Ohio, and its surrounding suburbs:

a.   2011 Grandview High Gravity Hullabaloo;

b.   2013 Grandview High Gravity Hullabaloo;

c.   2013 Grandview Digfest;

d.   2013 North Market Columbus Microbrew Festival;

e.   2014 Ohio Craft Brew Festival at the North Market in Columbus;

f.   2014 Grandview Digfest;

g.   2014 Tremors Beer Tasting at Studio 35 in Grandview;

h.   2014 Craft Draft Brewfest in Gahanna; and

5

      i.   2015 Ohio Craft Brew Festival at the North Market in Columbus.

21.    Additionally, by 2014, HHB was distributing its HOOF HEARTED beers for resale in bars and restaurants throughout Columbus and the surrounding suburbs, including, for example, the following locations:

    a.   The Daily Growler in Powell;

    b.   The Daily Growler in Upper Arlington;

    c.   Bodega in the Short North;

    d.   Growl! in Columbus; and

    e.   The Crest Gastropub in Columbus.

22.    Prior to April 2015, HHB's distribution of its HOOF HEARTED beer products, moreover, expanded beyond the Midwest, with the HOOF HEARTED branded products being distributed out of state to places as far aways as Portland, Maine.

23.    HHB also advertised and marketed its HOOF HEARTED brand and beer to consumers throughout the U.S. on social media, on its website, and when featured in magazines.

24.    Prior to February 2016, HHB had approximately fifty wholesale accounts to which it sold its HOOF HEARTED beer, dozens of which were in the Columbus, Ohio, area.

25.    In sum, given its extensive use and conduct set forth herein, HHB owns common law trademark rights in the HOOF HEARTED brand and name.

**HHB'S Formation of Defendant and The Operating Agreement**

26.    In early 2014, A & R Creative Group, LLC ("A & R") approached HHB to discuss a potential business venture.

27.    The A & R representatives had restaurant experience and expressed an interest in teaming up with HHB in a combined brewpub and kitchen endeavor.

6

28. By the time A & R approached HHB, HHB had established the HOOF HEARTED brand and made it well-known throughout the United States, including the State of Ohio and central Ohio.

29. Ultimately—after over a year of contemplating the business venture—on or about April 14, 2015, HHB and 2023 E, LLC ("2023 E") formed a limited liability company and executed an operating agreement (the "Operating Agreement"), which created the Defendant. HHB holds a fifty-percent (50%) member interest in Defendant. 2023 E holds the other fifty percent (50%) interest.[1] *See* Exhibit 1.

30. On information and belief, 2023 E was an entity formed for the sole purpose of entering into the Operating Agreement, and its representatives are relatives to A & R ownership and directly affiliated with A & R.

31. Defendant ultimately opened the brewpub and kitchen for business on or about February 2016.

**HHB Provides Defendant an Implied License to Use the HOOF HEARTED Trademark**

32. There is no express licensing agreement between HHB and Defendant.

33. While the Operating Agreement addresses Defendant's business entity name and certain product licensing, it does not provide for Defendant's public-facing use of HHB's HOOF HEARTED mark as the brand name for Defendant's establishment or any of Defendant's services. *See generally* Exhibit 1.

34. For example, Article 2.1 of the Operating Agreement provides that the initial *entity name* of Defendant "shall be Hoof Hearted Brewpub, LLC." To facilitate securing of this entity

---

[1] The parties entered into an Operating Agreement and, for reasons not relevant to the claims herein, an Amended & Restated Operating Agreement, both dated April 14, 2015. For purposes of this Complaint, all relevant provisions remain identical in the Operating Agreements and the original Operating Agreement is attached hereto as Exhibit 1.

name, HHB (as owner of the existing HOOF HEARTED mark) agreed to "execute the necessary documents to consent to the name of the Company acceptable to the Secretary of State." *See* Exhibit 1 at § 2.1.

35.     As a result, Defendant—with HHB's consent—filed the *trade name* "Hoof Hearted Brewing" with the Ohio Secretary of State in 2016. *See* Exhibit 2.

36.     Notably, Defendant was not required to do business under its formal entity name. The public-facing name of Defendant's retail establishment was not required to be "Hoof Hearted Brewpub." Rather, Article 2.1 of the Operating Agreement specifically provides that Defendant can do business "under any such other or additional names as the Members from time to time approve." *See* Exhibit 1 at § 2.1.

37.     Nonetheless, over the years, Defendant, under HHB's supervision and co-ownership, offered its services and HHB's HOOF HEARTED products under the "Hoof Hearted Brewing" name.

38.     Despite the Operating Agreement's silence on this point, Defendant had a non-exclusive, license from HHB to use HHB's HOOF HEARTED mark in the consumer-facing name of Defendant's brewpub located at 850 North 4th Street, Columbus, Ohio 43215.

39.     As a 50% owner of Defendant, and as the supplier of the beer sold at Defendant's brewpub, HHB assisted and oversaw Defendant's use of the HOOF HEARTED brand in connection with Defendant's brewpub while ensuring the brewpub's beer and services met the quality standards HHB required. Indeed, HHB was entirely in charge of the brewing operations and quality of beer served at the brewpub.

40.     HHB engaged in a close working relationship with the managers of Defendant's brewpub until the relationship with Defendant and 2023 E deteriorated in late 2022. Often, HHB

employees were even working in the brewpub brewing beer to sell at the establishment, making HHB's oversight of the use of its brand a constant.

41.     Defendant thus had a limited, royalty-free, nonexclusive, revocable, implied license to use the HOOF HEARTED mark as the consumer-facing brand of Defendant's brewpub.

42.     Defendant's limited license to use the HOOF HEARTED brand did not arise from Defendant's Operating Agreement. HHB provided the limited license by consent after the execution of the Operating Agreement.

### The Dispute Between HHB and 2023 E, LLC

43.     Starting in or around late 2022, HHB and 2023 E began disputing certain financial commitments and commercial obligations set forth in the Operating Agreement. Those disputes ultimately resulted in litigation.

44.     2023 E's lawsuit was a preemptive maneuver to avoid providing a promised proposed resolution between it and HHB, whose working relationship could not go forward. That complaint centers on the Operating Agreement and includes claims for breach of contract, breach of fiduciary duty, accounting, unjust enrichment, and declaratory judgment. *See 2023 E LLC v. Hoof Hearted Brewing LLC*, Case No. 23 CV 007110, Franklin County Court of Common Pleas, Compl. dated 10/05/2023.

45.     As a response to 2023 E's lawsuit and the ongoing deadlock between the co-equal members, HHB sought judicial dissolution of Defendant because HHB and 2023 E were at an irreconcilable impasse. *See Hoof Hearted Brewing LLC v. Hoof Hearted Brewpub LLC, et al.*, Case No. 23 CV 007279, Compl. dated 10/11/2023 (later consolidated on 12/20/2023 into Case No. 23 CV 007110).

46.     In late 2022 and thereafter, HHB became aware of several continuing concerning issues with Defendant's brewpub, such as videos of the brewpub's employees throwing chairs,

damages to the brewpub's interior, and complaints from consumers about customer safety, including suspected date-rape druggings.

47.     HHB learned that on March 19, 2024, Defendant's landlord delivered a Notice of Default and Termination of Defendant's lease agreement for the brewpub premises. *See* Exhibit 3.

48.     Roughly one month later, on April 23, 2024, the Defendant's landlord delivered a Second Notice of Default and Request for Financial Statements to the Defendant and 2023 E, demanding prompt production of financial information to attempt to reach a resolution by April 26, 2024. *See* Exhibit 4.

49.     On information and belief, Defendant never provided the requested financial information to the Landlord.

50.     Defendant's future as a tenant under the lease agreement is, at best, uncertain. Defendant may very well be evicted any day because, to the best of HHB's knowledge, Defendant remains in default of its obligations under the lease.

51.     Defendant's only business is operating the brewpub out of that location. Without the lease, there is no more business to operate at all.

52.     Involuntary termination of Defendant's lease and a possible eviction would severely damage HHB's HOOF HEARTED brand and the goodwill associated therewith.

**HHB's Termination of the Implied Trademark License**

53.     Due to the irreconcilable differences between the parties and related deterioration of HHB's relationship with 2023 E, the looming dissolution of Defendant, HHB's growing concerns regarding the quality of services at the brewpub, and Defendant's threatened lease termination and possible eviction from its premises, on April 30, 2024, HHB terminated Defendant's license to use the HOOF HEARTED mark as the consumer-facing brand of the brewpub.

54.     Specifically, on April 30, 2024, HHB's counsel delivered a letter via email to Defendant's attorney formally revoking Defendant's implied trademark license to use the HOOF HEARTED mark for the consumer-facing brand of the brewpub. *See* Exhibit 5. Defendant confirmed receipt of the letter the same day. *See* Exhibit 6.

55.     HHB's letter gave Defendant eight days (until May 8, 2024) to cease using the HOOF HEARTED mark as the name and brand of the brewpub.

56.     On information and belief, and based on lack of compliance by Defendant, Defendant has no intention of ceasing use of the HOOF HEARTED mark and will begin infringing on HHB's rights on May 8, 2024. Defendant's counsel's communications already confirm as much. *See* Exhibit 6.

57.     As of the filing of this action, on information and belief, Defendant is still using HHB's HOOF HEARTED mark within the consumer-facing name of Defendant's brewpub and intends to do so unless enjoined.

58.     Defendant's unauthorized use of HHB's HOOF HEARTED mark after termination of its implied license will cause, and is likely to continue to cause, consumer confusion as to the source of Defendant's services and as to whether HHB endorses or otherwise approves of the brewpub's services.

59.     Such consumer confusion is even more likely considering HHB plans to open a HOOF HEARTED taproom in Columbus in close proximity to Defendant's brewpub in just over one week.

**HHB II's Taproom**

60.    HHB, as the owner of the HOOF HEARTED mark, is free to engage in any business ventures it so chooses using its HOOF HEARTED brand. Indeed, the Operating Agreement expressly permits such direct competition. *See* Exhibit 1 at § 5.9.

61.    The Operating Agreement provides as follows:

> <u>**Other Activities of the Members.**</u> Any Member, any affiliates and any officer, director, shareholder, member, employee or agent of any member or any affiliates may engage in or possess an interest in other business ventures of every nature and description, independently or with others, **including, but not limited to, those competitive with the business of the Company**. Neither the Company nor any other Member shall have any rights in and to such independent ventures or the income or profits derived therefrom nor shall any Member assert any claim with respect thereto or with respect to the opportunities therefrom.

*See* Exhibit 1 at § 5.9 (emphasis added).

62.    Consistent with its express rights under this provision, in 2023, HHB decided to explore the possibility of opening up a taproom in Columbus.

63.    Indeed, 2023 E has also pursued and engaged in its own competitive businesses.

64.    Later, the owners of HHB formed HHB II in January 2024, and HHB II located its new taproom spot—26 E. 5th Avenue in Columbus.

65.    Given the common individual owners of HHB and HHB II, and much like HHB was able to do for years with Defendant, HHB had provided an implied license for HHB II to use the HOOF HEARTED mark in connection with HHB II's 5th Avenue taproom. Through the common ownership between HHB and HHB II, HHB can oversee the use of the HOOF HEARTED brand and the quality operations at HHB II's location.

66.    The anticipated opening day of the 5th Avenue taproom is May 15, 2024.

67.    In a letter dated April 8, 2024, Defendant's counsel has already challenged HHB's (and consequently, HHB's licensee, HHB II's) legal right to use HHB's HOOF HEARTED mark

in connection with the anticipate 5th Avenue taproom. Defendant's counsel's letter even suggests that Defendant somehow possesses ownership rights in the mark, to the exclusion of HHB and, consequently, its licensees. *See* Exhibit 7.

68.     HHB responded to Defendant's letter on April 16, 2024, explaining in detail how that neither applicable law nor the parties' Operating Agreement precludes HHB from using its own mark in connection with the anticipated taproom. *See* Exhibit 8.

69.     Accordingly, a real and justiciable controversy exists between Defendant on the one hand, and HHB and HHB II on the other as to whether HHB and its licensee, HHB II, can operate the 5th Avenue taproom using HHB's HOOF HEARTED mark.

## CLAIMS

70.     HHB brings its claims in order to immediately stop Defendant's continued, and now unauthorized, use of HHB's HOOF HEARTED mark after the termination of Defendant's trademark license on April 30, 2024. Defendant's continued use of HHB's HOOF HEARTED mark after termination of its license, particularly in light of the Defendant's default on its lease and likely imminent eviction from the premises, causes HHB immediate and irreparable harm. Defendant's continued use of HHB's HOOF HEARTED mark after termination of the license creates a likelihood of consumer confusion. Moreover, this likelihood of confusion is sure to increase substantially when HHB II opens its HOOF HEARTED-branded taproom in Columbus in just over one week.

## COUNT I
## Unfair Competition and False Designation of Origin
### (15 U.S.C. § 1125(a))

71.     Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth here.

72.     HHB owns the valid and enforceable marks HOOF HEARTED, HOOF HEARTED BREWING, and HOOF HEARTED BREWERY, which HHB has continuously used in commerce since at least 2011.

73.     Defendant's use in commerce of the HOOF HEARTED mark for the name and consumer-facing brand for Defendant's brewpub is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant's establishment by or with HHB and thus constitutes false designation of origin/unfair competition, in violation of 15 U.S.C. §1125(a).

74.     Defendant's acts alleged herein are without HHB's consent or authority.

75.     Defendant's wrongful conduct, unless and until it is immediately and permanently enjoined and restrained by order of this Court, will cause great and irreparable injury to HHB.

76.     HHB has no adequate remedy at law and is entitled to injunctive relief prohibiting Defendant from using the HOOF HEARTED mark or any confusingly similar designation in connection with Defendant's establishment.

**COUNT II**
**Deceptive Trade Practices**
**(Ohio Revised Code § 4165.01 *et seq*.)**

77.     Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

78.     By using HHB's HOOF HEARTED mark in commerce in connection with Defendant's brewpub without HHB's authorization, Defendant has created a likelihood of confusion or misunderstanding as to the origin, sponsorship, and/or approval of Defendant's brewpub.

14

79.     Defendant's wrongful conduct is in violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq.*

80.     Defendant's conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to HHB.

81.     HHB has no adequate remedy at law and is entitled to an injunction prohibiting Defendant from using the HOOF HEARTED mark or any confusingly similar designation pursuant to Ohio Rev. Code § 4165.03.

## COUNT III
## Unfair Competition Under Ohio Common Law

82.     Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

83.     Upon information and belief, Defendant will, for the indefinite future, continue to use HHB's HOOF HEARTED mark and other confusingly similar designations for the brewpub so as to mislead ordinary purchasers and lead them to believe mistakenly that Defendant's brewpub is licensed, sponsored, approved, or authorized by HHB when it is not.

84.     Defendant has not indicated that it will comply with HHB's revocation of the implied license to Defendant.

85.     Rather than committing to comply with HHB's demand, Defendant has demonstrated an intent to challenge HHB's rights and HHB's termination of Defendant's license to use the HOOF HEARTED mark.

86.     Defendant's wrongful conduct alleged herein has proximately caused, and will continue to cause, HHB substantial injury, including damage to its goodwill, confusion of potential customers, injury to its reputation, and diminution of value of its intellectual property.

15

87.     Defendant's wrongful conduct alleged herein constitutes unfair and unlawful practices in violation of the common law of the State of Ohio to the injury of HHB and the public.

88.     Defendant's wrongful conduct, unless restrained, will cause great and irreparable injury to HHB.

89.     HHB has no adequate remedy at law and is entitled to an injunction restraining Defendant from engaging in further such unlawful conduct.

## COUNT IV
### Declaratory Relief (As to HHB II)

90.     Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

91.     Real and justiciable controversies exist between HHB II and the Defendant, entitling HHB II to the following declaratory relief:

   a.   Defendant cannot preclude HHB II from using the HOOF HEARTED mark from HHB at its 5th Avenue taproom, unless and until HHB revokes its implied license to HHB II; and

   b.   HHB II is entitled to use the HOOF HEARTED mark from HHB at its 5th Avenue taproom, unless and until HHB revokes its implied license to HHB II.

## COUNT V
### Declaratory Relief (As to HHB)

92.     Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

93.     Real and justiciable controversies exist between HHB and the Defendant, entitling HHB to the following declaratory relief:

a. HHB has revoked Defendant's implied license to use the HOOF HEARTED mark, and therefore, Defendant has no right to use the HOOF HEARTED mark going forward.

## COUNT VI
## Temporary, Preliminary, and Permanent Injunctive Relief

94. Hoof Hearted re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

95. There is a substantial likelihood that Hoof Hearted will prevail on the merits of its' claims.

96. Hoof Hearted will suffer immediate irreparable injury absent injunctive relief.

97. The requested injunction will not cause substantial harm to third parties.

98. It is in the public interest to grant Hoof Hearted's injunctive relief sought.

99. Hoof Hearted requests a temporary, preliminary, and permanent injunction as follows:

a. Enjoining Defendant and its agents, affiliates, employees, and all persons in active concert or participation with them, from directly or indirectly (i) using, promoting, marketing, or advertising the HOOF HEARTED, HOOF HEARTED BREWING, and HOOF HEARTED BREWERY marks, or any confusingly similar marks, in connection with the brewpub located at 850 North 4th Street, Columbus, Ohio 43215, or any other location or establishment; and (ii) from continuing any and all of the acts of unfair competition and unfair business practices alleged herein;

b. Ordering pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, business cards, stationary, packages, wrappers, receptacles, websites, phone apps, social media, promotional materials, brochures, manuals, educational materials, and advertisements bearing the HOOF HEARTED, HOOF HEARTED BREWING, and HOOF HEARTED BREWERY marks, or any other designation that infringes any of the foregoing, be delivered up and destroyed; and

c. Ordering that Defendant and its agents, affiliates, employees, and all persons in active concert or participation with it are enjoined and restrained from engaging

in further acts which constitute unlawful, deceptive, and unfair business practices related in any way to the HOOF HEARTED mark; and

d. Ordering that Defendant is enjoined and restrained from preventing HHB and/or HHB II from using the HOOF HEARTED mark in connection with the 5th Avenue taproom.

## PRAYER FOR RELIEF

WHEREFORE, Hoof Hearted respectfully request that the Court enter a judgment in their favor against Defendant on all claims alleged herein as follows:

a) Temporary, preliminary, and permanent injunctive relief as set forth herein and as follows:

a. Pursuant to 15 U.S.C. § 1116, Ohio Rev. Code § 4165.03, and/or state common law, temporarily, preliminarily, and permanently enjoining Defendant and its agents, affiliates, employees, and all persons in active concert or participation with them, from directly or indirectly (i) using, promoting, marketing, or advertising the HOOF HEARTED, HOOF HEARTED BREWING, and HOOF HEARTED BREWERY marks, or any confusingly similar marks, in connection with the brewpub located at 850 North 4th Street, Columbus, Ohio 43215, or any other location or establishment; and (ii) from continuing any and all of the acts of unfair competition and unfair business practices alleged herein;

b. Ordering pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, business cards, stationary, packages, wrappers, receptacles, websites, phone apps, social media, promotional materials, brochures, manuals, educational materials, and advertisements bearing the HOOF HEARTED, HOOF HEARTED BREWING, and HOOF HEARTED BREWERY marks, or any

18

other designation that infringes any of the foregoing, be delivered up and destroyed;

c. Ordering that Defendant and its agents, affiliates, employees, and all persons in active concert or participation with it are enjoined and restrained from engaging in further acts which constitute unlawful, deceptive, and unfair business practices related in any way to the HOOF HEARTED mark;

d. Ordering that Defendant is enjoined and restrained from preventing HHB and/or HHB II from using the HOOF HEARTED mark in connection with the 5th Avenue taproom;

e. Ordering that Defendant shall file with the Court and serve on HHB, within fifteen (15) days after service of the Court's injunction and/or judgment as requested herein, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Court's injunction and/or judgment;

b) Declaratory relief as set forth in Counts Four and Five as follows:

a. Defendant cannot preclude HHB II from using the HOOF HEARTED mark from HHB at its 5th Avenue taproom, unless and until HHB revokes its implied license to HHB II;

b. HHB II is entitled to use the HOOF HEARTED mark from HHB at its 5th Avenue taproom, unless and until HHB revokes its implied license to HHB II; and

    c.   HHB has revoked Defendant's implied license to use the HOOF HEARTED marks, and therefore, Defendant has no right to use the HOOF HEARTED mark going forward.

c)    Such other relief, both legal and equitable, as this Court deems just and proper.

Dated: May 8, 2024               Respectfully submitted,

*/s/ O. Judson Scheaf, III*
O. Judson Scheaf, III (0040285)*
     *Trial Attorney*
**O.J. SCHEAF & ASSOCIATES, LLC**
4524 Hudson Drive
Stow, Ohio 44224
T: (614) 657-8010
E-mail: Jud@scheaf-law.com

And

T. Earl LeVere (0063515)
Erica L. Arras (0101139)
**ICE MILLER LLP**
250 West Street, Suite 700
Columbus, Ohio 43215
T: (614) 462-1095
F: (614) 462-5135
E-mail: Earl.LeVere@icemiller.com
          Erica.Arras@icemiller.com

*Counsel for Plaintiffs Hoof Hearted Brewing LLC*
*and Hoof Hearted Brewing II, LLC*

20

**<u>VERIFICATION</u>**

On behalf of Hoof Hearted Brewing LLC and Hoof Hearted Brewing II, LLC, the undersigned states, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the facts and allegations contained herein are true and correct to the best of his knowledge and belief, except so far as the allegations are herein stated to be on information and belief, and that, for said allegations, the undersigned state, under penalty of perjury pursuant to 28 U.S.C. § 1746, that they believe said allegations to be true.

Jarrod Bichon
Member
Hoof Hearted Brewing LLC and
Hoof Hearted Brewing II, LLC

Executed this 8th day of May 2024